**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| MARY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | 11 C 4136 |
| | ) | |
| v. | ) | Judge Ronald A. Guzmán |
| | ) | |
| CHRIS MARDER, WILLIAM WEINSHEIMER and MICHAEL COTTLE, | ) ) ) | |
| | ) | |
| Defendants.[1] | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff has sued defendants Chris Marder, Michael Cottle and William Weinsheimer for conspiring to interfere and tortiously interfering with her employment contract or prospective economic advantage and inheritance expectancy and for malicious prosecution. The case is before the Court on defendants' motions pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment. For the reasons set forth below, the Court grants the motions.

**Facts**[2]

Defendant Chris Marder is S. Edward Marder's son. (Defs.' LR 56.1(a) Stmt. ¶ 2.) Defendant William Weinsheimer is an Illinois attorney who represented Edward in estate planning

---

[1] James Montague is also named as a defendant, but because he was never served, the Court dismisses plaintiff's claims against him pursuant to Federal Rule of Civil Procedure 4(m).

[2] Plaintiff was advised that, in response to these motions, she had to submit evidence to support her version of the facts, and if she failed to do so the Court would assume that defendants' version was true. (*See* Local Rule 56.2 Notice to Pro Se Litigant.) Despite the warning, plaintiff did not respond to defendants' Local Rule 56.1(a) Statement of Facts. Thus, the Court deems plaintiff to have admitted all of the facts set forth in it. *See* Local Rule 56.1(b)(3)(C).

matters. (*Id.*) Defendant Michael Cottle was Edward's accountant from 1981 to 2005 and from 2006 until Edward's death on August 18, 2007. (*Id.*)

In March 2001, Edward was diagnosed with dementia, and from August 2002 until his death, he required full-time nursing care. (*Id.* ¶¶ 4, 6.)

Starting in August 2002, plaintiff was Edward's head nurse. (*Id.* ¶ 7.) As such, she administered medication to him, hired and supervised other nurses to care for him, attended his doctor's appointments and traveled with him. In addition, she wrote checks for household expenses, including those for her own pay. (*Id.* ¶¶ 8-9.)

On February 12, 2003, Edward appointed Chris Marder as agent under his powers of attorney for health care and property. (*Id.* ¶ 11.)

In February 2004, Edward was diagnosed with Alzheimer's disease. (*Id.* ¶ 12.) Though Edward could not distinguish between past and present or reality and fantasy, could not groom or bathe himself or remember the names and faces of familiar people, plaintiff continued to write checks for Edward to sign for, among other things, her own pay. (*Id.* ¶¶ 14-16, 19.)

In March 2005, financial advisors from Edward's bank told Chris Marder and Cottle that the revocable trust from which Edward's expenses were paid would run out of money within six months. (*Id.* ¶ 20.) In August 2005, the financial advisors hired Dr. Steven Fox to assess Edward's condition, the appropriateness of his care and the possibility that he was being exploited or abused by plaintiff. (*Id.* ¶ 23.) Over the next six months, Fox analyzed Edward's medical and expense records and interviewed his friends, family and doctors. (*Id.* ¶¶ 24-25.) One of Edward's nurses, Marianne O'Donnell, told Fox that plaintiff had tried to get valuable possessions from Edward, asked him several times throughout 2005 to bequest money to her and took the title to his car. (*Id.* ¶ 27.)

On January 3, 2006, plaintiff and Edward met with Weinsheimer to discuss revising Edward's estate. (*Id.* ¶ 30.) A few days later, Weinsheimer told Chris Marder about the meeting and his concern that Edward was not thinking for himself. (*Id.* ¶¶ 31-32.)

On January 19, 2006, Weinsheimer sent Edward a letter saying that he would not make any changes to the estate plan until Edward met privately with him to discuss the matter. (*Id.* ¶ 34.) Edward never contacted Weinsheimer for a meeting. (*Id.* ¶ 35.)

On January 25, 2006, Fox examined Edward and told Chris Marder that plaintiff was not caring for Edward properly and had instructed the other nurses to isolate him socially, Edward was entirely dependent on plaintiff and could not protect himself from abuse, intimidation or exploitation by her, and Edward needed an order of protection against plaintiff. (*Id.* ¶¶ 37-38.)

Shortly thereafter, Chris Marder filed a police report on plaintiff, obtained an order of protection against her, and fired her. (*Id.* ¶¶ 43-48.)

After receiving the report, the Highland Park Police Department conducted an investigation. (*Id.* ¶¶ 50-51.) On March 20, 2006, the police arrested plaintiff, and on April 12, 2006, a grand jury indicted her for financial exploitation of an elderly person. (*Id.* ¶¶ 52-56.)

Between plaintiff's termination in February 2006 and his death in August 2007, Edward never told any of his nurses that he wanted to speak to Weinsheimer, to revise his estate plan, to give plaintiff a monetary gift or to include her in his will. (*Id.* ¶ 66.) Similarly, defendants did not ask Edward's nurses to keep him from contacting Weinsheimer or revising his estate plan or to dissuade Edward from including plaintiff in it. (*Id.* ¶ 67.)

On December 19, 2006, the Illinois Department of Financial and Professional Regulation filed a complaint against plaintiff alleging that she violated state nursing rules by, among other

3

things, paying herself $1.56 million from Edward's checking account, taking title to his car and other valuables, acting as the manager of his affairs and administering inappropriate medication to him. (*Id.* ¶ 68.) After an investigation and hearing, the Department sustained the complaint, suspended plaintiff's license indefinitely and fined her $7,500.00. (*Id.* ¶ 69.)

On May 17, 2010, plaintiff filed a petition for Chapter 7 bankruptcy in the United States District Court in Reno, Nevada. (*Id.* ¶ 77.) The petition does not disclose any of the claims she asserts in this suit. (*Id.* ¶ 78.)

**Discussion**

To prevail on a summary judgment motion, "the movant [must] show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). At this stage, we do not weigh evidence or determine the truth of the matters asserted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). We view all evidence and draw all inferences in favor of the non-moving party. *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Summary judgment is appropriate only when the record as a whole establishes that no reasonable jury could find for the non-moving party. *Id.*

The record establishes that plaintiff lacks standing to assert her conspiracy and tortious interference claims. It is undisputed that each of these claims arose before plaintiff filed for bankruptcy. *See Hi-Lite Prods. Co. v. Am. Home Prods. Corp.*, 11 F.3d 1402, 1410 (7th Cir. 1993). (stating that "a tortious interference with contract claim accrues when the contract is breached" and "a tortious interference with prospective advantage accrues when the prospective advantage is interfered with"); *Schere v. Balkema*, 840 F.2d 437, 439 (7th Cir. 1988) (cause of action for civil

4

conspiracy runs from each overt act that is alleged to have caused damage); Def.'s LR 56.1(a) Stmt. ¶¶ 48, 77 (stating that plaintiff was terminated in February 2006 and filed for bankruptcy in 2010). Thus, the claims belong to the bankruptcy estate, and plaintiff has no standing to assert them. *See Biesek v. Soo Line R.R. Co.*, 440 F.3d 410, 413 (7th Cir. 2006) (stating that debtor could not pursue FELA claim that accrued before he filed for bankruptcy because "[p]re-bankruptcy claims are part of debtors' estates . . . [and] therefore belong[] to the Trustee"); *see also Rawoof v. Texor Petroleum Co., Inc.*, 521 F.3d 750, 757 (7th Cir. 2008) (stating that "[a] well-established prudential-standing limitation is the principle that a litigant cannot sue in federal court to enforce the rights of third parties"); *Locals 666 & 780 of Int'l Alliance of Theatrical Stage Employees & Moving Picture Mach. Operators of U.S. & Canada v. U.S. Dep't of Labor*, 760 F.2d 141, 143 (7th Cir. 1985) ("[A] litigant seeking relief in federal court must satisfy *both* constitutional and prudential limitations in order to have standing to sue.") (emphasis original). Therefore, defendants are entitled to judgment as a matter of law on these claims.

Plaintiff fares no better with her claim for malicious prosecution. To defeat defendants' motion on this claim, plaintiff must offer evidence that suggests, among other things, that they started a criminal action against her for which there was no probable cause. *See Hurlbert v. Charles*, 938 N.E.2d 507, 512 (Ill. 2010). Probable cause is an absolute bar to a malicious prosecution claim, and a grand jury indictment is *prima facie* evidence that probable cause exists. *See Freides v. Sani-Mode Mfg. Co.*, 211 N.E.2d 286, 296 (Ill. 1965) ("'Prima facie probable cause' is established by the return of the indictment," which can "be rebutted by other evidence such as proof that the indictment was obtained by false or fraudulent testimony before the grand jury"); *Burghardt v. Remiyac*, 565 N.E.2d 1049, 1052 (Ill. App. Ct. 1991) ("The existence of probable cause is a complete defense to

a malicious prosecution cause of action."). It is undisputed that plaintiff was indicted by a grand jury. (Defs.' LR 56.1(a) Stmt. ¶ 56.) Because she offers no evidence to rebut this *prima facie* evidence of probable cause, defendants are entitled to judgment as a matter of law on her malicious prosecution claim.

### Conclusion

For the reasons set forth above, the Court finds that there is no genuine issue of material fact as to the claims plaintiff asserts against defendants, who are entitled to judgment as a matter of law. Accordingly, the Court grants defendants' motions for summary judgment [109, 111 & 114] and terminates this case.

**SO ORDERED.**                                              **ENTER:  October 12, 2012**

*[signature: Ronald A. Guzman]*
_____
**HON. RONALD A. GUZMAN**
**United States District Judge**